IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**LUCKY SHOALS COMMUNITY ASSOCIATION, INC.,**

      **Plaintiff,**

      **v.**                                                          **CASE NO._____**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,**

      **Defendants.**

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Lucky Shoals Community Association, Inc. ("Lucky Shoals"), hereby states its complaint for declaratory and injunctive relief against Defendants United States Environmental Protection Agency and Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency.

### INTRODUCTION

1.     This Complaint arises from Defendants' illegal and unconstitutional policy that purported to terminate of an entire grant program and refused to disburse over 100 grants already awarded pursuant to the Inflation Reduction Act,

1

which included a section amending the Clean Air Act to establish Environmental and Climate Justice Block Grant program grants (also known as "Community Change Grants") to "benefit disadvantaged communities" by making "appropriated" $2.8 billion for eligible activities that include pollution monitoring, prevention, remediation, and mitigation, 42 U.S.C. § 7438, without any statutory, regulatory, or constitutional authority and in blatant violation of the Administrative Procedure Act, the Inflation Reduction Act, and the United States Constitution.

2.      Lucky Shoals is a recipient of one such grant, authorizing $19,953,400.00 for the acquisition, construction, and operation of a green campus for the community of Norcross to preserve and rehabilitate green space, train the community in emergency services and clean energy jobs, and provide greenhouse gas and pollution monitoring, prevention, remediation, and mitigation services.

3.      The day he became President and almost immediately after swearing to uphold the United States Constitution, President Trump violated that oath by signing Executive Orders purporting to "pause the disbursement of funds appropriated through the Inflation Reduction Act" and, later, purporting to terminate government programs.

4.      Defendants then purported to terminate the "Community Change Grant" program and refused to disburse every single grant that had already been awarded, including Lucky Shoals's.

2

5.      Lucky Shoals seeks an order declaring Defendants' actions illegal and unconstitutional and requiring Defendants to perform their obligations under the law of the United States to which they swore loyalty, and confirming the government's ongoing and future obligations towards all grant recipients under federal law and not summarily freeze or terminate disbursements.

## PARTIES

6.      Plaintiff, Lucky Shoals, is a 501(c)(3) non-profit entity designed to facilitate community and economic development in unincorporated Gwinnett County, Georgia, including in the area of clean energy and healthy environment.

7.      Defendant EPA is a federal agency in the Executive branch that is required to protect public health and the environment in the United States.

8.      Defendant Lee Zeldin became the 17th Administrator of EPA on January 29, 2025.  Like "all executive . . . Officers," Administrative Zeldin was required by the United States Constitution to "be bound by Oath or Affirmation, to support this Constitution."  U.S. Const. Art. VI, § 1, Cl. 3.  He is sued in his official capacity.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331, because this action arises under the Constitution and laws of the

United States.[1]

10.      Venue is proper in the United States District Court for the Northern

District of Georgia pursuant to 28 U.S.C. §§ 1391(e)(1)(B), (C), because both

Defendants are officers, employees, and/or agencies of the United States acting in

their official capacity or under color of legal authority, a substantial part of the

events or omissions giving rise to this claim occurred in this judicial district where

Lucky Shoals's grant was terminated, and Lucky Shoals is headquartered in this

judicial district.

---

[1] Although, as a ruling regarding an application for stay, its order is not binding as
to other cases, the Supreme Court of the United States recently considered a
similar case in which the government defendants urged that district courts lack
jurisdiction over challenges to policy-level actions related to grants.  The
determinative vote ruled that such claims indeed "belong in district court," rather
than the Court of Federal Claims as the government defendants in that case had
urged.  *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2662
(2025) (Mem.).

## FACTUAL BACKGROUND

### Congressional Passage of the Inflation Reduction Act

11.    The United States Senate passed the Inflation Reduction Act on August 7, 2022, and the United States House of Representatives passed it on August 12.

12.    On August 16, 2022, the Inflation Reduction Act was signed into law by the President of the United States.

13.    The Inflation Reduction Act appropriated $2.8 billion to EPA to award grants to monitor, prevent, and/or remediate harmful effects of pollution including climate change to benefit disadvantaged communities.

14.    The Inflation Reduction Act provided that the EPA Administrator "***shall***" use the appropriated $2.8 billion.  42 U.S.C. § 7438(b)(1) (emphasis supplied).

15.    This provision of the Inflation Reduction Act is federal statutory law, specifically 42 U.S.C. § 7438, which is titled "Environmental and climate justice block grants," with a subheading titled "Appropriation."[2]

---

[2] Congress subsequently provided that "*unobligated* balances of amounts made available to carry out section 138 of the Clean Air Act (42 U.S.C. 7438) are rescinded," but left the awards already granted, like those awarded to Community Change Grant program grants, such as the grant received by Lucky Shoals, intact. An Act to Provide for Reconciliation, H.R. 1, Title VI, § 60016 (emphasis supplied).

**Grant Agreement Between Defendant EPA and Lucky Shoals Pursuant to the Inflation Reduction Act**

16.    Pursuant to OMB federal regulations, EPA provided public notice of grants pursuant to 42 U.S.C. § 7438 and solicited applications.  2 C.F.R. § 200.204.

17.    Lucky Shoals and around 2,700 other applicants sought grant funding.

18.    EPA designed and conducted a merit review process of those applications, only selecting such grants most likely to be successful in meeting the goals of the program.  2 C.F.R. § 200.205.

19.    Lucky Shoals was awarded $19,953,400.00 by EPA on December 2, 2024 to acquire land to create a green campus for the community of Norcross, which would rehabilitate and preserve green space; offer training including emergency training and clean energy job training; and provide services such as air, water, and energy assessment and remediation—all to "a multicultural community that has proven hard to reach."

20.    As with all such grants, the federal government does not award all of the money in a single payment to the grant recipient, but rather federal regulations require "payment methods must minimize the time elapsing between the transfer of funds from the Federal agency or the pass-through entity and the disbursement of funds by the recipient or subrecipient."  2 C.F.R. § 200.305(b).

**Directives to "Terminat[e]" Grants Indiscriminately**

21.     On January 20, 2025, President Trump issued an Executive Order with a section purporting to be "Terminating the Green New Deal" and unlawfully instructing all Executive agencies to "immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022." "Unleashing American Energy," 90 Fed. Reg. 8353, 8357 (Jan. 29, 2025).

22.     Also on January 20, President Trump issued an Executive Order purporting to "establish[] the Department of Government Efficiency to implement the President's DOGE Agenda." "Establishing and Implementing the President's 'Department of Government Efficiency,'" 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025).

23.     On January 21, 2025, the White House Office of Management and Budget OMB and Kevin Hassett issued a memorandum instructing all federal agency heads to immediately pause disbursement of funds appropriated under the Inflation Reduction Act.

24.     On January 27, 2025, EPA issued a memorandum to staff, titled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause," purporting to freeze "all disbursements for unliquidated obligations funded by any line of accounting including funds appropriated by" the Inflation Reduction Act.  The memorandum did not direct or apply any individualized

analysis but applied to any and "all disbursements" under the Inflation Reduction Act.

25.    On February 26, 2025, President Trump issued an Executive Order instructing each agency head to, among other actions, "review all existing covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify (including through renegotiation) such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of my Administration."  "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative," 90 Fed. Reg. 11095, 11096 (Mar. 3, 2025).

### Defendants' Violation of the Constitution and Federal Law by Purportedly Terminating the Grant Program

26.    EPA subsequently purported to terminate the Inflation Reduction Act's Community Change Grants program by sending letters purporting to terminate all such grants, including on May 2, 2025, the grant awarded to Lucky Shoals.

27.    Defendant EPA purportedly terminated the grant program and all grants thereunder, and as EPA Administrator, Defendant Administrator Zeldin was responsible for the purported terminations.

28.    The communications purporting to terminate the grant program and all grants thereunder, Termination Memorandums, are boilerplate other than information in the heading, reflecting a single policy.

29.    The Termination Memorandum sent to Lucky Shoals stated that the "objectives of the award are no longer consistent with EPA funding priorities" and that the grant "provides funding for programs that promote initiatives that conflict with the Agency's policy of prioritizing merit, fairness, and excellence in performing our statutory functions; that are not free from fraud, abuse, waste, or duplication; or that otherwise fail to serve the best interests of the United States." However, in addition to such grounds being illegal and unconstitutional grounds for the Defendants' actions, the Termination Memorandum failed to demonstrate *any analysis at all* as to Lucky Shoals, reflecting a policy of terminations consistent with executive directives, rather than any analysis of Lucky Shoals's grant individually.

30.    Defendants undertook no analysis at all of Lucky Shoals's suitability pursuant to the factors the Inflation Reduction Act required Defendants to consider.

31.    Indeed, Defendants undertook no analysis of Lucky Shoals, or any other Community Change Grants program grant recipient, *at all*.

32.    In a similar case with multiple plaintiffs, including some who received grants under the same provision of the Inflation Reduction Act as Lucky Shoals, a federal court ordered government defendants—including Defendants in this case—to produce "all documents related to freezing, pausing, and/or terminating of grant funds to the grant recipients who are parties to this litigation."  Order Granting Declaratory and Permanent Injunctive Relief, Granting in Part and Denying in Part Preliminary Injunction Relief, and Denying Defendants' Motion to Stay, *Sustainability Inst., et al. v. Trump, et al.*, Case No. 2:25-cv-2152-RMG (D.S.C. May 20, 2025), Doc. 157, at 5 (quotation marks omitted).  The defendants "produced thousands of documents, ***not one showing any individualized review of decisions to freeze or terminate grants of the Plaintiffs in this action***."  *Id.* (emphasis supplied).

33.    Subsequently, the defendants in that case produced over 500 *additional* pages, "[n]ot one" of which "showed any individualized review of the grant of any Plaintiff in this action before the grant was terminated or designated for termination."  *Id*. at 6.  EPA, who is a Defendant in this case, has admitted that it purported to eliminate *all 130-odd* Community Change Grants program grants.

34.    Although the Fourth Circuit ordered that jurisdiction in that case should not be in the district court, it did not reverse the district court's conclusion that the government defendants probably violated the APA for purposes of the

likelihood of success prong of a motion for temporary restraining order or injunctive relief.

35.    Indeed, in that case the defendants—again including EPA—informed the court that they "do not contest judgment on the merits of [Plaintiffs'] APA claims" for 32 of the 38 grants at issue at all. *Id*. at 2.

36.    EPA's policy of purporting to terminate and refusing to disburse funds for the Community Change Grants program constitutes a final agency action, because it was not tentative or interlocutory but instead was definitive and purported to determine Lucky Shoals and other grant recipients' access to the funding to which they were entitled pursuant to the Inflation Reduction Act grant it had been awarded without any possible recourse.

**Lucky Shoals's Injuries and Defendants' Improper Purposes**

37.    As a result of Defendants' unlawful refusal to allow Lucky Shoals access to its grant because Defendants terminated the applicable grant program wholesale, Lucky Shoals's finances have been severely strained.

38.    Lucky Shoals's day-to-day operations have suffered as a result of the lack of access to funds.

39.    For example, Lucky Shoals had to withdraw a purchase offer for $7 million for land for green space, and already other potential purchasers have made offers on the property.

40.    Lucky Shoals is unable to pay for personnel or services.

41.    For example, three staff members and three sub-awardees are not being paid and/or being paid part-time.

42.    For example, Lucky Shoals has supplies for energy and environmental testing and remediation but lacks the staff funds to administer such testing and remediation.

43.    For example, Lucky Shoals is unable to replace the energy efficiency, indoor air, and water testing and remediation measures, and therefore the renters and commercial buildings that were being served are simply not being reached.

44.    Defendants' cruelty and the attendant uncertainty has caused extreme distress among staff members and community partners who rely on Lucky Shoals and make Lucky Shoals what it is.

45.    Further, Defendants' actions have resulted in a loss of good will among Lucky Shoals's community partners, who, unless Defendants' action is declared illegal and unconstitutional and is stopped, will no longer trust Lucky Shoals to be able to implement its services, pay as promised, or go through with agreements such as real estate acquisitions or construction projects.

46.    Lucky Shoals is now losing the trust of the community it serves, which will hinder Lucky Shoals's ability to convince members of the community to work with it in the future and trust Lucky Shoals to deliver on its mission.

47.     Lucky Shoals has already suffered organizational injury and reputational damage as a result of Defendants' purported termination of the Community Change Grants program grants and refusal to disburse promised funding so that Lucky Shoals can fulfil its promises to the community, and such harm will only increase unless and until Defendants' unlawfulness is stopped.

48.     Other organizations in similar positions have also been exposed to similar harms as a result of Defendants' action.  A district court, in another case in which the government defendants including Defendants in this case, observed as follows:

> It is so obvious that it almost need not be stated that when money is obligated and therefore expected . . . and is not paid as promised, harm follows—debt is incurred, debt is unpaid . . . services stop, and budgets are upended.  And when there is no end in sight to the Defendants' funding freeze, that harm is amplified because those served by the expected but frozen funds have no idea when the promised monies will flow again.

*Woonasquatucket River Watershed Council v. USDA*, 2025 WL 1116157, at *22 (D.R.I. Apr. 15, 2025) (appeal filed by the government).

49.     No special circumstances make an award of attorney's fees unjust.

50.     Rather, Defendants' conduct constitutes a special factor so as to justify a higher fee than the general limit of $125 per hour for attorney's fees allowed under the Equal Access to Justice Act.

51.     The position of Defendants was not substantially justified.

52.     Defendants' improper purposes include but are not limited to harassment, unnecessary delay, and increase in Lucky Shoals's expense.

## CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR DECLARATORY AND INJUNCTIVE RELIEF

### Count 1: Defendants' Actions Are Arbitrary and Capricious, Pursuant to the Administrative Procedure Act

53.     Lucky Shoals incorporates by reference paragraphs 1-52 as though the same were set forth herein in their entirety.

54.     In purporting to terminate all Community Change Grants program grants, Defendants did not examine relevant data or articulate any explanation for its action as to any individual grant recipient.

55.     Indeed, the entirely boilerplate language of EPA's Termination Memorandums, as well as the fact that myriad other grant recipients have had grants purportedly terminated, reveals that Defendants conducted no evaluation of grant recipients like Lucky Shoals *at all*.

56.     Defendants relied on factors Congress did not intend them to consider, including the Trump Administration's policy goals and overall cost-saving, rather than the goals articulated in the Inflation Reduction Act that such grants "benefit disadvantaged communities" through specifically-enumerated activities at 42 U.S.C. § 7438.

57.     Defendants failed to consider an important aspect of the problem of the grant program, both in the form of catastrophic practical consequences it has already produced among grant recipients and the communities they serve and in the goal of the Inflation Reduction Act to "benefit disadvantaged communities."

58.     Defendants offered an explanation in EPA's Termination Memorandum, that the "objectives of the award are no longer consistent with EPA funding priorities," which is counter to the evidence before the agency that Lucky Shoals's actions under the grant are consistent with EPA's statutory charge of protecting the public health and environment of the United States.

59.     Defendants' purported explanation for their action is so implausible that it could not be ascribed to a difference in view from Lucky Shoals or the product of agency expertise, because the blanket actions toward Inflation Reduction Act grant programs and grant recipients and entirely boilerplate language demonstrate a complete absence of any analysis of any individual recipient's grant, and the stated rationale is not one that is lawful or constitutional.

60.     Accordingly, Defendants' action to purportedly terminate the entire grant program, including the grant of Lucky Shoals and all other grant recipients awarded thereunder, is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law and accordingly should be held unlawful and set aside pursuant to the Administrative Procedure Act.  5 U.S.C. § 706(2)(A).

15

**Count 2: Defendants' Actions Exceed Their Authorities, Are Not in Accordance with Law, and Fail to Observe Procedure Required by Law, Pursuant to the Administrative Procedure Act**

61.     Lucky Shoals incorporates by reference paragraphs 1-52 as though the same were set forth herein in their entirety.

62.     Defendants offered an explanation in EPA's Termination Memorandums, that the "objectives of the award are no longer consistent with EPA funding priorities," which exceeds their authority, because regardless of the objectives of *EPA*, the Inflation Reduction Act charges EPA with effectuating the directives and purposes *Congress* has mandated, and also is not in accordance with the Inflation Reduction Act and the Impoundment Control Act of 1974.

63.     As discussed below in Count 4, Defendants' action also exceeds their authority as Executive agencies and officials thereunder, under the United States Constitution.

64.     Defendants' blanket purported termination of all grants under the Environmental Justice and Climate Change Block Grant program, without recourse, violates regulations for terminating federal grants to non-federal recipients, such as 2 C.F.R. § 200.340, setting forth the conditions under which an agency may terminate an award, and 2 C.F.R. § 200.342, requiring opportunities to object and provide information challenging the action.

65.     Accordingly, Defendants' action purportedly terminating the grant program and the grants of Lucky Shoals and other grant recipients thereunder is contrary to constitutional right, power, privilege, or immunity of the legislature; in excess of statutory jurisdiction, authority, or limitations of Defendants; and without observance of procedure required by law, and accordingly should be held unlawful and set aside pursuant to the Administrative Procedure Act.  5 U.S.C. §§ 706(2)(B)-(D).

### Count 3: Defendants Violated the Inflation Reduction Act Pursuant to Nonstatutory Review and Ultra Vires Action

66.     Lucky Shoals incorporates by reference paragraphs 1-52 as though the same were set forth herein in their entirety.

67.     The Inflation Reduction Act "***appropriated***" $2.8 billion in funding to award grants and legally provided that EPA "***shall***" use such amounts to award grants.  42 U.S.C. § 7438 (emphases supplied).

68.     Consistent with its statutory duties, EPA obligated a grant to Lucky Shoals and other entities, via a rigorous, competitive, and open application process.

69.     By terminating a grant program wholesale and thus blocking Lucky Shoals's access to a grant that was already awarded, Defendants violated the Inflation Reduction Act.

70.     Accordingly, Defendant Zeldin has acted in his official capacity beyond statutory limitations and Defendant EPA similarly acted beyond its

17

statutory limitations as to EPA's role in implementing grants pursuant to the

Inflation Reduction Act, and Lucky Shoals is entitled to the equitable relief it

seeks, separate and apart from the Administrative Procedure Act.

### Count 4: Defendants Violated the Separation of Powers of the United States Constitution, Pursuant to Nonstatutory Review and Ultra Vires Action

71.    Lucky Shoals incorporates by reference paragraphs 1-52 as though the

same were set forth herein in their entirety.

72.    The United States Constitution vests legislative powers as follows:

"All legislative Powers herein granted shall be vested in a Congress of the United

States, which shall consist of a Senate and House of Representatives."  U.S. Const.

Art. I, § 1.

73.    The Executive's only role as to legislation is set forth in the

Presentment Clause, pursuant to which every Bill having passed both houses of

Congress "shall, before it become a Law, be presented to the President of the

United States," who may sign it or return it.  U.S. Const. Art. I, § 7, Cl. 2.

74.    Once a law has been effected by Congress, the Constitution vests with

the Executive the duty to "take Care that the Laws be faithfully executed."  U.S.

Const. art. II, § 3.

75.    The Constitution further provides: "No Money shall be drawn from

the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const.

Art. I, § 9, Cl. 7.

76.    It further provides: "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States."  U.S. Const. Art. I, § 8, Cl. 1.

77.    By purporting to terminate the Community Change Grants program grants and blocking Lucky Shoals's access to a grant that was already awarded, Defendants violated these Constitutional Separation of Powers provisions vesting with Congress the power of the purse.

78.    Accordingly, Defendant Zeldin acted in his official capacity beyond constitutional limitations imposed by the Separation of Powers provisions discussed above and Defendant EPA acted beyond its constitutional limitations, and Lucky Shoals is entitled to the equitable relief it seeks, separate and apart from the Administrative Procedure Act.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (recognizing private right of action directly under the Constitution to challenge governmental action under separation-of-powers principles, as well as the Constitution more broadly).

**PRAYER FOR RELIEF**

WHEREFORE, Lucky Shoals requests that the Court grant the following relief:

(a) Issue a declaratory judgment that Defendants' purported termination of already-awarded Environmental and Climate Justice Block Grant program grants, which had been issued pursuant to Congressionally-appropriated

19

funding, is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law and accordingly should be set aside pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A);

(b) Issue a declaratory judgment that Defendants' purported termination of already-awarded Environmental and Climate Justice Block Grant program grants, which had been issued pursuant to Congressionally-appropriated funding, is contrary to constitutional right, power, privilege, or immunity of the legislature; in excess of statutory jurisdiction, authority, or limitations of Defendants; and without observance of procedure required by law, and accordingly should be set aside pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(B)-(D);

(c) Issue a declaratory judgment that Defendant Zeldin acted in his official capacity and Defendant EPA acted beyond statutory limitations as to EPA's role in implementing grants pursuant to the Inflation Reduction Act;

(d) Issue a declaratory judgment that Defendant Zeldin acted in his official capacity and Defendant EPA acted beyond constitutional limitations imposed by the Separation of Powers provisions of the United States Constitution;

(e) Permanently enjoin Defendants from their purported termination of already-awarded Environmental and Climate Justice Block Grant program, which

had been issued pursuant to Congressionally-appropriated funding, and compel Defendants to effect such program, pursuant to the Administrative Procedure Act;

(f) Prohibit Defendants from otherwise impeding, blocking, cancelling, or terminating Lucky Shoals's access to its funds awarded by the federal government, pursuant to Lucky Shoals's claims for nonstatutory review and ultra vires and not the Administrative Procedure Act;

(g) Require Defendants to make grant program managers available to Lucky Shoals to assist with the administration of Lucky Shoals's grant funds, and require that they respond to questions from Lucky Shoals in a timely and substantively responsive manner, pursuant to Lucky Shoals's claims for nonstatutory review and ultra vires and not the Administrative Procedure Act;

(h) Provide Lucky Shoals and the Court with weekly status updates regarding grant disbursements, pursuant to Lucky Shoals's claims for nonstatutory review and ultra vires and not the Administrative Procedure Act;

(i) Provide Lucky Shoals and the Court with weekly status updates regarding grant program administration, pursuant to Lucky Shoals's Administrative Procedure Act claims;

(j) Retain jurisdiction over this matter to ensure compliance with the above relief;

(k) Given the lack of substantial justification of Defendants' position, award Lucky Shoals its reasonable fees, costs, and expenses, including attorney's fees including a special factor so as to justify a higher fee than the general limit of $125 per hour for attorney's fees allowed under the Equal Access to Justice Act, pursuant to 28 U.S.C. § 2412; and

(l) Award such other relief as the Court deems equitable, just, and proper.

This 17th day of December, 2025.

*/s/ **Stacey G. Evans***
Stacey G. Evans
Ga. Bar No. 298555
sevans@evansbowers.com
George Lott
Ga. Bar No. 820219
glott@evansbowers.com
J. Amble Johnson
Ga. Bar No. 229112
ajohnson@evansbowers.com

EVANS BOWERS
729 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 850-6750 (Telephone)

*Counsel for Plaintiff*